# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| ROBERT DRAYTON BOWEN, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:26-cv-113 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| WESTON WAMP, *et al.*, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Robert Drayton Bowen, a former prisoner housed in the Hamilton County Jail at all relevant times, filed a civil rights complaint [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 3]. For the reasons set forth below, the Court will **DENY** Plaintiff's motion to proceed *in forma pauperis* and **ORDER** Plaintiff to file an amended complaint containing only properly joined claims.

## I.   MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). Inasmuch as Plaintiff has paid the $405 filing fee, his motion to proceed without prepayment [Doc. 3] is **DENIED as moot**.

## II.   SCREENING OF COMPLAINT

### A.   Standard

Under the PLRA, district courts must screen prisoner complaints and sua sponte dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C.

§ 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B.     Plaintiff's Allegations

Plaintiff attempted to have the "spicy" meals changed at the Hamilton County Jail. [Doc. 1 at 5]. On May 1, 2025, Plaintiff did not accept the "spicy" lunch tray but handed someone (presumably the person delivering the meal) a note containing three Bible verses relating to things that were "fixed" to be "consumable" and instructions not to mark the meal as accepted. [*Id.*].

Plaintiff entered a kiosk request for the Chaplain to come and read the note. [*Id.*]. Chaplain Waters arrived. [*Id.*]. Plaintiff asked Chaplain Waters to change his meal, but "Defendant Waters said there was nothing he could do." [*Id.*].

Nurse Shannon, Deputy Ryan Chastain, and "other deputies" called Plaintiff out of his housing unit, and Plaintiff explained to them that he could not eat the "spicy" food and was not going to make himself sick. [*Id.* at 6]. "Defendant Shannon told Defendant Chastain that she knew nothing about it, even though it is all on the kiosk system." [*Id.*]. "Defendant Chastain said he heard enough" and told Plaintiff "to come with him." [*Id.*]. Plaintiff asked to pack his property, but Defendant Chastain told Plaintiff that Defendant John Doe #1 would secure Plaintiff's personal

2

property. [*Id.*]. When Plaintiff passed Defendant Waters on the sidewalk, he loudly stated, "They are relocating me because I am 'fasting.'" [*Id.*]. But Defendant Waters did not respond. [*Id.*].

Defendant Chastain moved Plaintiff to "Suicide Watch" as punishment for not accepting one meal that would have made Plaintiff sick. [*Id.*]. Defendant Chastain removed Plaintiff from commissary food, a drinking cup with Kool-Aid, prescription bifocals, hygiene supplies, religious materials, and other personal property. [*Id.* at 6–7]. Plaintiff was stripped naked and given a robe/blanket to wear. [*Id.* at 7].

Plaintiff was given the "same meals which made him sick]"; was only permitted clean water at "pill call"; denied showers or told he would have to dry off with a wash cloth; had nothing with which to brush his teeth; and was not given a clean blanket/robe. [*Id.*]. The 15 x 20-foot cell contained up to eighteen (18) inmates [*Id.*]. There was not enough room on the floor to lay mats for all the inmates. [*Id.*]. Plaintiff remained in this unit for 9.5 days. [*Id.*]. Defendant Dr. Little was in charge of Quality Correctional Health Care ("QCHC"). [*Id.*].

Plaintiff was then moved to G-2-24. [*Id.*]. No one could locate Plaintiff's personal property, nor would they replace it. [*Id.* at 7–8]. And no one "viewed the housing unit" like Plaintiff requested. [*Id.* at 8].

Plaintiff, who had been using an old version of the "Inmate Handbook[,]" managed to obtain a revised version that contained no significant changes. [*Id.*]. "There was nothing noticed to justify what they did to Plaintiff." [*Id.*]. After several attempts to obtain a copy of the unabridged version, Defendant Amy Weems "came to ask Plaintiff Bowen if he did not understand that [she] was not going to print the PDF." [*Id.*]. Plaintiff was told to ask a question and she would answer it, but Plaintiff does not know what is in the unabridged version that is not in the condensed version.

3

[*Id.* at 8–9]. Defendant Weems refused to assist Plaintiff in retrieving this information from the kiosk system. [*Id.* at 9].

Deputy Chief of Corrections Timothy A. Davis signed the revised Inmate Handbook in November 2025, but it has many of the same inconsistencies "and violations" as previous editions. [*Id.*]. For example, the kiosk system does not allow inmates to file requests or grievances; the rules are not enforced as written; and inmates are responsible for cleaning but are not given the needed supplies. [*Id.*]. Defendant Davis's "new procedures" did nothing to improve conditions. [*Id.* at 10].

Captain Terrell never responded to a letter about Plaintiff's personal property and "refused to provide the Material Safety Data Sheets (MSDS) information" permitting inmates to be informed of the chemicals they use to clean. [*Id.*].

Defendant QCHC has violated Plaintiff's religious freedom and provided inadequate health care services. [*Id.*]. "Timing has been delayed deliberately[,]" they have failed to follow doctor's orders and supply prescribed medication, and pills have been improperly administered and/or dropped on the floor. [*Id.*].

After Plaintiff's diet was changed to a "no spice/no bean" medical diet, Aramark Correctional Services, LLC ("Aramark") and Defendant Lee "Medic" were "unprofessional and retaliated preparing the medical diets." [*Id.* at 11]. When L. Medic arrived at B-1-2 to discuss "a low sodium issue[,]" Plaintiff asked for the "sodium to be read from the daily nutrition value table." [*Id.*]. Defendant L. Medic "left mad and said he would just change [their] diets to 'soy' and water." [*Id.*]. Plaintiff then started receiving "TVP (soy bean product) on the 'No Spice/No Bean' medical diet." [*Id.*].

4

Chaplain Jones and Defendant Waters have failed to provide unleavened bread, a replacement Bible, they have "refused deeper knowledge for biblical information," they have "shown preferential treatment (asking if Plaintiff Bowen is a Jew), [they] and have not provided any worship service." [*Id.*]. "Defendant Jones answered back that they will not be looking up any more information, after Chaplain Terry Bell answered what Defendant Waters refused (next Jubilee Year)." [*Id.*].

Deputy Ely Green used excessive force on Plaintiff Bowen in the G-1 unit. [*Id.* at 11]. Defendant Green shoved Plaintiff from behind, and Plaintiff fell on the concrete floor. [*Id.* at 11]. Plaintiff was given Tylenol at the time but medical refused to give him more Tylenol or look at the bruise the next day. [*Id.* at 11–12].

Jane Doe #2 and Deputy Wyatt left Plaintiff without a blanket for five days and without a change of clothes for about a month. [*Id.* at 12]. In two different incidents, Deputy Wyatt lost Plaintiff's laundry. [*Id.*]. Defendant Jane Doe #2 has refused to replace these items. [*Id.*]. After a about a month of being unable to shower, Plaintiff developed an infection. [*Id.*]. Deputy Davis provided Plaintiff another set of clothes, and Deputy Stockwell replaced the blanket. [*Id.*].

John Doe #2 is responsible for maintaining the Jail. [*Id.*]. Some of the issues with maintenance include that: (1) it took a month to repair the toilet so it would flush, (2) the heat does not work, (3) condensation forms, (4) there is no water pressure, and (5) there are roaches. [*Id.*].

When inmates complained about the heat not working, "they" collected blankets the next morning. [*Id.*]. Defendant J. Hixson was the commissary deputy in Bravo, and when "[t]hey thought they were missing a clamp off of the cart[,]" Hixson locked the unit down. [*Id.* at 12–13]. Defendant Hixson handcuffed some inmates behind their backs while he ransacked the cells, while

others were not handcuffed at all. [*Id.* at 13].  Plaintiff was handcuffed. [*Id.*].  Defendant Hixson took a Christmas stocking that belonged to Plaintiff, declaring it contraband. [*Id.*].

Other deputies are "lackadaisical in their job performance." [*Id.*].  Plaintiff can recall his cell door being left unlocked on some occasions. [*Id.*].  Once, Deputy Ingram "unlocked half the cell doors of the gang members[,]" and Plaintiff told Deputy Ingram that they were not to be released at the same time. [*Id.*].  Deputy Ingram went back and started locking the doors. [*Id.*].

Aggrieved by these events, Plaintiff filed the instant suit against Defendants Weston Wamp, Ken Smith, Lee Helton, Austin Garrett, Timothy A. Davis, Rodney Terrell, QCHC, Aramark, Audrilla Jones, John Waters, Dr. Little, Nurse Shannon, Dr. Jane Doe, Ryan Chastain, John Doe #1, Ely Green, J. Hixson, Deputy Wyatt, Jane Doe #2, John Doe #2, Lee "Medic[,]" Amy Weems, and Deputy Ingram, seeking injunctive and monetary relief. [*Id.* at 16, 17].

### C.    Analysis

The Court cannot conduct the required screening of Plaintiff's complaint at this time, because it contains a variety of misjoined claims against unrelated defendants.

While a plaintiff may join as many claims as he has against an opposing party under Rule 18(a) of the Federal Rules of Civil Procedure, Rule 20(a)(2) allows a plaintiff to sue multiple defendants only where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Thus, Rule 20 does not permit plaintiffs to join unrelated claims against different defendants in one lawsuit.  *See*, *e.g.*, *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person— say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to

pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner."); *Smith v. Lavender*, No. 2:22-CV-1875, 2022 WL 4121929, at *6 (S.D. Ohio, Sept. 9, 2022) (severing unrelated claims a prisoner plaintiff filed in the same complaint against different defendants) (citations omitted); *White v. Newcomb*, 2022 WL 2763305, at *4–5 (W.D. Mich. July 15, 2022) (providing that a plaintiff cannot join claims against multiple defendants in one lawsuit "'unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact'" (quoting *Proctor v Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) and collecting cases standing for the proposition that prisoners cannot join unrelated claims against different defendants in a single lawsuit)).

Here, Plaintiff has filed a single lawsuit complaining of a variety of events that allegedly occurred at the Hamilton County Jail, but most of these claims are unrelated to each other. For example, Plaintiff complains that some Defendants denied him religious rights, other Defendants subjected to him to unconstitutional conditions of confinement, still other Defendants denied him access to medical care, while another Defendant used excessive force against him [*See generally* Doc. 2]. Such claims are misjoined. And, at this stage of the proceedings, the Court declines to guess which of Plaintiff's allegations he desires to pursue in this particular action. Therefore, the Court will permit Plaintiff an opportunity to amend his complaint and present only properly joined claims.

Accordingly, Plaintiff must file an amended complaint within fourteen (14) days of entry of this Order that contains a short and plain statement of specific facts setting forth exactly how his constitutional rights have been violated, the specific party(ies) responsible for that violation, any injury(ies) he has suffered, and his request for relief. For clarity, each claim should be set forth in a separate numbered paragraph, and only claims that are properly joined with each other

should be included in this amended complaint. Plaintiff must avoid conclusory legal statements or arguments in this amended complaint. The Court will **DIRECT** the Clerk to mail Plaintiff a § 1983 form for this purpose.

Plaintiff is **NOTIFIED** that if he includes claims that are not properly joined under Rule 20(a)(2) and Rule 18(a) in the amended complaint he files, the Court will presume that Plaintiff intends to proceed only as to his **first listed claim** and **those claims that are properly joined with that first claim**, and the Court will summarily **DISMISS** any misjoined claims without prejudice.

The Court **NOTIFIES** Plaintiff that it will only address the merits of Plaintiff's claims that relate to his original complaint. Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims, and he is advised that the Court will **DISMISS** any such claims. Further, the Court **NOTIFIES** Plaintiff that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings.

If Plaintiff does not file an amended complaint by the deadline, the Court will **DISMISS** his complaint for failure to prosecute and comply with an order of the Court.

The Court **NOTIFIES** Plaintiff that it **WILL NOT** consider any other kind of motion for relief until after the Court has screened the amended complaint pursuant to the PLRA, which the Court will do as soon as practicable. Accordingly, the Court will automatically deny any motions filed before the Court has completed this screening.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion to proceed *in forma pauperis* [Doc. 3] is **DENIED** as moot;

2.   The Clerk is **DIRECTED** to forward Plaintiff a § 1983 form;

3.   Plaintiff is **ORDERED** to complete the § 1983 form within fourteen (14) days in accordance with the directives stated above;

4.   Plaintiff is **NOTIFIED** that failure to comply with this Order will result in the dismissal of this action; and

5.   Plaintiff is **ORDERED** to immediately inform the Court and Defendants of any address changes in writing.  Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13.  Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

9