# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| ROBERT DRAYTON BOWEN, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:26-cv-113 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| WESTON WAMP, *et al.*, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This is a civil rights action under 42 U.S.C. § 1983 filed by Plaintiff Robert Bowen, who has paid the filing fee. Plaintiff's amended complaint is now before the Court for screening in compliance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. Plaintiff has also filed a motion for an extension of time to serve summonses in this action [Doc. 9]. For the reasons set forth below, the Court will **DISMISS** the amended complaint for failure to state a claim and **DENY** Plaintiff's motion for an extension of time as moot.

## I. PLRA SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and sua sponte dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630

F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.      PLAINTIFF'S ALLEGATIONS[1]

While housed at the Hamilton County Jail, Plaintiff "exhaust[ed] all means of having the 'spicy' meals changed" but was unable to affect any change. [Doc. 11 at 4]. So, on May 1, 2025, Plaintiff refused to accept the "spicy" lunch tray and handed the corrections officer ("CO") a note with three Bible verses related to "things not consumable" and instructions "not to mark the meals as accepted, in order to keep track of which meals are not consumable." [*Id.*].

Plaintiff made a kiosk request for the Chaplain to come read his note, and Chaplain Waters responded. [*Id.*]. Plaintiff asked Chaplain Waters to change his meal, but "Defendant Waters said there was nothing he could do." [*Id.*].

Nurse Shannon, Deputy Ryan Chastain, and "other deputies" questioned Plaintiff, and Nurse Shannon "acted like she had no idea of what Plaintiff Bowen said, even though it is entered in the kiosk system." [*Id.*]. "Defendant Chastain said he heard enough" and told Plaintiff "to come with him." [*Id.*]. Deputy Chastain did not permit Plaintiff to pack his personal property but told Deputy John Doe #1 to secure Plaintiff's property. [*Id.* at 5]. When Plaintiff and Deputy Chastain passed Chaplain Waters, Plaintiff loudly said, "They are relocating me[] because I am 'fasting'" in hopes that Chaplain Waters would speak up. [*Id.*]. But Chaplain Waters did not respond. [*Id.*].

---

[1] In its prior Memorandum and Order requiring Plaintiff to file an amended complaint, the Court advised Plaintiff that the "amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings" [Doc. 7 p. 8]. Therefore, the Court limits its recitation of the facts of this case to those recounted in the amended complaint.

Deputy Chastain moved Plaintiff to "suicide watch" as punishment for not accepting one meal that would have made Plaintiff sick. [*Id.*]. There were "up to 18 inmates" in the 15 x 20-foot cell—more inmates than the floor space accommodated. [*Id.* at 6]. For the "9.5 days" Plaintiff was housed in this cell, Plaintiff was given "only food that was making him sick"; was only permitted clean water at "pill call"; was denied showers or told he would have to dry off with a wash cloth; had nothing with which to brush his teeth; was "naked except for a blanket/robe which left private parts easily exposed"; and was not given a clean blanket/robe. [*Id.*]. During this period, Plaintiff was not allowed his commissary food, Kool-Aid, his prescription bifocals, hygiene supplies, religious materials, or any personal property. [*Id.* at 5].

Plaintiff was then moved to G-2-24. [*Id.* at 6]. No one could locate Plaintiff's personal property, nor would they replace it. [*Id.*]. And no one "viewed the housing unit footage" like Plaintiff requested. [*Id.*]. Plaintiff mailed a letter to the Deputy Chief of Corrections, Tim A. Davis, and Captain Rodney Terrell admitted to having a letter Plaintiff wrote to Defendant Davis. [*Id.*]. But no real attempt at an investigation was made [*Id.* at 8].

Aggrieved, Plaintiff filed this amended complaint against Mayor Weston Wamp, Sheriff Austin Garrett, Deputy Chief Timothy Davis, Captain Rodney Terrell, Quality Correctional Health Care ("QCHC"), Chaplain John Waters, Dr. Little, Nurse Shannon, Deputy Ryan Chastain, and John Doe #1 seeking monetary and injunctive relief. [*Id.* at 2–3, 8–9, 11–12].

## III.   ANALYSIS

Plaintiff has raised official-capacity claims against all Defendants, and both individual and official capacity claims against Defendants Terrell, Waters, Little, Shannon, Chastain, and Doe [*Id.*]. The Court will address Plaintiff's official-capacity claims first before turning to the question of the individual liability of the remaining Defendants.

3

### A.	Official-Capacity Claims

To sustain an official-capacity claim, often referred to as a *Monell* claim, a plaintiff must allege facts from which a court could plausibly infer that his constitutional rights were violated because of an unconstitutional policy or custom of the entity being sued. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs"); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."). In this case, that is QCHC and Hamilton County, because official-capacity claims against the individual Defendants employed by the County is equivalent to suit against the County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

But to sustain suit against either QCHC or Hamilton County, "[P]laintiff must identify [a] policy, connect the policy to the [County or company] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and internal quotation marks omitted). Plaintiff may make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citations omitted).

Here, Plaintiff has not alleged any facts at all against QCHC, much less any that would permit the inference that a QCHC policy or custom violated Plaintiff's rights. This Defendant will be dismissed.

Neither has Plaintiff alleged any facts that would permit the plausible inference that implementation of Hamilton County's own policies or customs caused a deprivation of Plaintiff's constitutional rights. Instead, Plaintiff alleges that Mayor Weston Wamp and Sheriff Austin Garrett are "indirectly responsible" for the wrongdoings alleged because of their respective responsibilities to oversee operations at the Hamilton County Jail. [*See* Doc. 11 at 7]. But Hamilton County cannot be held liable for the wrongdoings of persons they have employed under a theory of respondeat superior. *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 505–06 (6th Cir. 1996). Rather, the County may be liable only for its "own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). And the allegations of the amended complaint do not permit the plausible inference that either the Sheriff or the Mayor, acting in their respective official capacities, implemented a policy or custom that deprived Plaintiff of his constitutional rights. Accordingly, all official-capacity claims against Defendants will be **DISMISSED**.

### B. Individual-Capacity Claims

To state a claim against any Defendant in his or her individual capacity, Plaintiff must adequately plead that each Defendant's own actions violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

### 1. Captain Rodney Terrell

Plaintiff alleges that Captain Rodney Terrell was in possession of a letter Plaintiff wrote to Deputy Chief of Corrections Tim A. Davis. [Doc. 11 at 6, 8]. The Court assumes Plaintiff intends

this allegation to form a claim that Defendant Terrell violated Plaintiff's rights by failing to respond to or remedy Plaintiff's grievances concerning the loss of his personal property, despite having been informed that it occurred. But a "failure to act . . . do[es] not constitute 'active constitutional behavior' as required [under § 1983] and thus, [is] not actionable" under the statute. *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). And Plaintiff does not otherwise have a constitutional right to an investigation as to what happened to his property. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). Accordingly, Plaintiff's claims against Captain Rodney Terrell will be **DISMISSED**.[2]

### 2. Chaplain Waters

Plaintiff alleges that Chaplain Waters (1) "said there was nothing he could do" when Plaintiff requested for his meals to be changed; and (2) failed to respond when Plaintiff yelled to him from the sidewalk. [Doc. 11 at 4]. Neither of these allegations state a plausible constitutional claim. Plaintiff has not alleged any facts that would permit the inference that Defendant Waters has any control over the food Plaintiff is served. And Defendant Waters is not subject to liability for failing to respond when Plaintiff yelled from the sidewalk that he was being relocated. Even if the Court presumes Defendant Waters heard Plaintiff and ignored him, Plaintiff has again not pled any facts suggesting that Defendant Waters had any control over Plaintiff's housing such that his intervention could have changed Plaintif's placement. Moreover, as noted above, Defendant Waters cannot be held constitutionally liable for a failure to act. *See Frodge*, 501 F. App'x at 532. Accordingly, Plaintiff's claims against Defendant Waters will be **DISMISSED**.

---

[2] Although Plaintiff has sued Defendant Davis solely in his official capacity, any intended individual-liability claim against Defendant Davis would fail for the same reasons.

### 3. Dr. Little

The only reference to Dr. Little in Plaintiff's amended complaint is that "[m]ental health had to receive approval by Dr. Little" for Plaintiff's suicide watch. [Doc. 11 at 6]. Such conclusory allegations are insufficient for the Court to infer that Plaintiff's constitutional rights were violated by Dr. Little's alleged conduct, and this Defendant will be **DISMISSED**. *Twombly*, 550 U.S. at 564–65 (noting that allegations must be supported with factual allegations that render the claim "plausible on its face").

### 4. Nurse Shannon

Plaintiff alleges that when he was questioned about refusing his meal on May 1, Nurse Shannon "acted like she had no idea of what Plaintiff Bowen said, even though it is entered in the kiosk." [Doc. 11 at 4]. Such vague allegations are insufficient to permit the plausible inference that Nurse Shannon's conduct violated Plaintiff's constitutional rights, and all claims against Defendant Shannon will be **DISMISSED**.

### 5. John Doe #1

Plaintiff maintains that John Doe #1was directed to pack his personal property, which then wound up missing. [Doc. 11 at 5, 6]. Such an allegation is too vague and conclusory to state a claim. But even if Plaintiff's allegations were filled out with additional factual detail, any potential remedy for Plaintiff would lie in state, not federal, law. The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a government employee deprives an individual of property, provided that the state provides a post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at

7

* 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201). Plaintiff has not pled that Tennessee's procedures are inadequate for addressing the alleged wrong, as is necessary to sustain his claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Accordingly, Plaintiff's claims against Defendant Doe will be **DISMISSED**.

### 6. Ryan Chastain

Plaintiff alleges that Deputy Ryan Chastain relocated him to suicide watch because he refused to accept one meal, which (1) resulted in the loss of Plaintiff's personal property and (2) caused Plaintiff to suffer various disagreeable conditions of confinement. [*See* Doc. 11 at 4–8].

However, Plaintiff cannot sustain a § 1983 claim against Defendant Chastain for the loss of his personal property under the *Parratt/Hudson* doctrines addressed above. *See Parratt*, 451 U.S. at 543; *Hudson*, 468 U.S. at 533. So, this allegation does not permit a § 1983 claim against Deputy Chastain. Therefore, the Court turns to a consideration of the alleged conditions under which Plaintiff was confined.

Conditions of confinement claims "are highly fact-specific[.]" *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). The Sixth Circuit has held:

> [A] conditions-of-confinement claim has two elements. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health or safety.

*Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (internal citations and quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). As to the first element, it is well-established that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" will establish a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and

internal quotation marks omitted).  And regarding the second element, a defendant demonstrates deliberate indifference to a pretrial detainee[3] by acting "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (citation omitted).

Plaintiff maintains that he was denied his personal property, had limited access to practice hygiene, and/or was left with only a "blanket/robe" while on "suicide watch" for "9.5 days" in an overcrowded cell. [Doc. 11 at 5, 6].  But such temporal deprivations that do not result in a physical injury are not the types of conditions that are objectively, sufficiently serious to constitute a constitutional violation.  *See, e.g., Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (holding that an "overcrowding" claim must allege that the overcrowding denied him "the minimal civilized measure of life's necessities" (citing *Rhodes*, 337 U.S. at 347)); *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) (finding "overcrowding is not, in itself, a constitutional violation"); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (providing that the denial of bedding, running water, toothpaste, and a shower for a brief period of time is not constitutionally "actionable conduct"); *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (providing that temporary inconveniences "did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency"); *see also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail. . . for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]").

---

[3] Plaintiff does not disclose his custodial status in his amended complaint. [*See generally* Doc. 11].  The Court presumes—to Plaintiff's benefit—that he was a pretrial detainee at all relevant times and thus subject to the less demanding test of the Fourteenth Amendment. *Morgan ex. rel Morgan v. Wayne Cnty.*, 33 F.4th 320, 326 (6th Cir. 2022) (noting the Eighth Amendment standard is "more demanding").

9

Plaintiff also contends that while on suicide watch he was "given only food that was making him sick." [Doc. 11 at 5]. This allegation is impermissibly conclusory. And notably, Plaintiff does not allege that he suffered any physical injuries as a result of the food he was served while on suicide watch, nor does he allege any facts from which the Court could infer that the food he was served rendered him malnourished. Therefore, this allegation also fails to state a viable § 1983 claim. *See Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated); *Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001) (finding inmate not denied "minimal civilized measure of life's necessities" where he failed to allege he could not maintain health on diet provided) (citation omitted).

Thus, the Court finds that the adverse conditions Plaintiff allegedly experienced on suicide watch are of an insufficient nature and duration to constitute "punishment" or to be "objectively, sufficiently serious" in the constitutional sense. *Bell*, 441 U.S at 535; *Spencer*, 449 F.3d at 728. As such, all Plaintiff's conditions-of-confinement claims will be **DISMISSED**.

This leaves Plaintiff's allegation that Defendant Chastain moved him to suicide watch "as punishment for not accepting one (1) meal that would make Plaintiff Bowen sick." [Doc. 11 at 5]. The Court finds such an allegation may seek to raise either a due process claim and/or a retaliation claim. The Court will consider each possible claim in turn.

To the extent Plaintiff intends to allege that it violated his due process rights to be placed on suicide watch, Plaintiff must show that he had a protected interest in avoiding such placement. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). That is, Plaintiff must

show that being deprived of an interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

However, Plaintiff has no liberty interest in his housing placement. *See, e.g., Montanye v. Haymes*, 427 U.S. 236, 242 (1976). And courts in the Sixth Circuit have held that mere placement on suicide watch does not implicate a liberty interest protected by the Constitution. *See, e.g., Jones v. Lee*, No. 2:09-CV-11283, 2012 WL 683362, at *4 (E.D. Mich. Mar. 2, 2012), *rep. and rec. adopted*, No. 09-11283, 2012 WL 1048541 (E.D. Mich. Mar. 28, 2012) (finding that "[t]emporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause," and observing that "there is no constitutional right to avoid being placed on suicide watch") (internal quotation marks omitted); *Jones v. Blackburn*, No. 3:14-CV-01229, 2014 WL 2480601, at *7 (M.D. Tenn. June 2, 2014) ("[B]ecause there is no liberty interest in assignment to any particular prison, or housing unit within a prison, the plaintiff has no due-process claim for being placed on suicide watch or precautionary watch."). Therefore, any claim based on the fact Plaintiff was placed on suicide watch fails.

Plaintiff also alleges, however, that he was moved to suicide watch as punishment for refusing a meal. Thus, the Court considers whether Plaintiff's allegations are sufficient to give rise to a plausible retaliation claim. To state a viable retaliation claim, Plaintiff must allege that (1) he "engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff may have engaged in protected conduct by filing grievances complaining that the food he was being served made him sick. *See, e.g., Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir.

11

2018). However, refusing a meal tray—which is the conduct which Plaintiff says caused him to be placed on suicide watch—is not protected conduct. *See Brown v. Panasiewicz*, 84 F. App'x 579, 581 (6th Cir. 2003) (finding prisoner's refusal to take a meal tray is not conduct "protected by the Constitution"). This is, at least in part, because government officials possess a legitimate penological objective in ensuring that inmates under their care receive adequate nutrition. And a prisoner's exercise of conduct that threatens a legitimate penological objective is not protected. *See, e.g., Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). And even if Plaintiff's conduct was protected, Plaintiff has not presented any facts that would permit the plausible inference that any retaliatory animus motivated Defendant Chastain's decision to place Plaintiff on suicide watch. *See Cantley v. Armstrong*, 391 F. App'x 505, 507 (6th Cir. 2010) (affirming district court's holding that a prisoner's complaint was insufficient to demonstrate a causal relationship between protected activity and adverse action because "'bare allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening" (quoting *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001))); *see also Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (to prevail on a First Amendment retaliation claim, the defendant's retaliatory motive must be a "but-for cause" of the plaintiff's injury, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive). Therefore, any retaliation claim against Defendant Chastain fails.

Accordingly, Plaintiff has failed to state a plausible § 1983 claim against Defendant Chastain under any constitutional theory, and all claims against him will be **DISMISSED**.

## IV.  CONCLUSION

For the reasons set forth above:

1. Even liberally construing the amended complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

12

2. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

3. Plaintiff's motion for an extension of time within which to serve summonses [Doc. 9] is **DENIED AS MOOT**; and

4. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**


*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

13